JOHN WRIGHT, Complainant; v. DISTRICT COURT et al., Respondents.

**INTOXICATING LIQUORS:** Constructions against Evasions—Duty
1  of Court. The statute (Sec. 2431, Code, 1897), directing such construction of the Intoxicating Liquor Act as will prevent evasions of the act, neither authorizes nor permits arbitrary action against the accused, but it does emphasize the duty of the court to scrutinize the record to prevent evasions. Evidence reviewed, and held to support a conviction for contempt.

**INTOXICATING LIQUORS:** Violation of Statute—Evidence—Certi-
2  fied Copy of Federal Tax Receipt Holders. The certified copy, provided for in Sec. 2427-a, Sup. Code, 1913, of the names of those who have paid the Federal tax on the sale of intoxicating liquors is prima-facie evidence that such persons are selling and keeping for sale intoxicating liquors in violation of law.

*Certiorari from Polk District Court.*—HON. W. H. McHENRY, Judge.

MONDAY, JUNE 21, 1915.

REHEARING DENIED SATURDAY, OCTOBER 2, 1915.

THE opinion sufficiently states the case.—*Annulled.*

*M. S. Odle,* for complainant.

*Dunshee & Haines,* for respondents.

WEAVER, J.—On May 20, 1914, in an action then pending in the district court of Polk county, the defendant, O. H. Meyer, was perpetually enjoined from illegal traffic in intoxicating liquors at his place of business in Des Moines and elsewhere in that judicial district. Thereafter, on September 5, 1914, information was filed charging him with a violation of the injunction. Appearing to the proceeding, Meyer admitted having been enjoined as alleged, but denied that he was or had been in contempt of the writ. Upon the trial, the prosecution introduced as a witness one Tuttle, who testified that he and one Wilson, on September 2, 1914, visited defendant's place of business, where they bought two bottles of beer and sandwiches; that they there drank the contents of one of the bottles and carried the other away with them. Wilson also testified, corroborating the story told by Tuttle. One Hulburt swore that at or about the same time, he purchased two bottles of beer at defendant's place. These witnesses saw beer bottles being brought out of the booths where others were apparently drinking. On the part of the defense, the head waiter at defendant's place of business testified that he did not remember the occurrences sworn to by Tuttle, Wilson and Hulburt, and that no beer was sold there that he knew of. He said, however, that people often brought beer there at night and drank it with the lunch which was there served them. At the request of such persons, the waiters would place the beer in the defendant's ice chest to cool and when, during the lunch, such customers would call for their beer, waiters would get it and bring glasses for their use. This would occur frequently—every night. Other waiters testified to the same general effect. Two policemen testified to their familiarity with the place, one of them saying he put in most of his time there. Both saw beer drinking there and both took the word of Meyer that he was selling nothing. One of them even heard Meyer refuse to sell a man whisky in his presence, and heard applicants for beer informed that there was "nothing doing." Meyer, testifying in his own behalf, says he keeps a restaurant and he does not remember seeing these three

witnesses come in there. Never saw them before. Never heard any talk about beer with them. No liquor sold in that place to his knowledge. Being asked by his own counsel whether he paid a revenue liquor tax or had a liquor revenue stamp, he testified very positively that he never "bought any license to sell beer there". "I hold no stamp." "I know nothing about that." On having the question repeated and the meaning of the interrogatory explained to him, he repeated very positively that he never bought a federal stamp for the sale of liquor there. On cross-examination, he again said, "I have not paid the internal revenue for selling beer anywhere." His attention then being directed to the fact that his name had been certified by the revenue department as the holder of such a stamp, he said that when he was enjoined, he told the revenue officer that "if it had been proven that liquor had been drank there" he would pay it, and added, "I did pay it. There was a man told me some time ago I would have to pay it so I paid it then." His final statement was to the effect that he paid the revenue tax to cover past delinquencies, and not for protection of future business. Upon rebuttal, the certified list of revenue stamp holders was introduced in evidence, showing defendant to hold license or stamp No. 218, issued July 28, 1914, the entry being followed by ditto marks under the date August 13, 1914, which seems to have been a date entered in connection with the filing of a list by the county attorney in the auditor's office for the fiscal year ending June 30, 1913. Upon this showing, the trial court held that a case for punishment for contempt had not been made out, and dismissed the proceeding at plaintiff's costs.

In our judgment, the information against Meyer has sufficient support in the evidence. Courts are, by statute, Code Sec. 2431, required to so administer the law for the suppression of the liquor traffic as to prevent its eva-

1. INTOXICATING LIQUORS: constructions against evasions: duty of court.

sion. This does not require or authorize the court to hold the defendant guilty of contempt without substantial evidence on which to base the finding, but it does emphasize the court's duty to

scrutinize the record and, if an offense is fairly established, to assess the penalty which the statute prescribes. In this case, the defendant kept an all night restaurant, where many people congregated. Five or six waiters were on duty until after midnight, and three for the remainder of the night. The defendant was in the active management of the place. According to their own admissions, much beer was being drunk at their tables and in the closed booths. They were furnishing the place to drink, were cooling and carrying the beer and supplying glasses to the drinkers. All this *may* have been possible and defendant not be guilty of illegal selling or keeping for sale; but it is equally possible, and we think it much more in accord with the theory, that he had a more intimate and profitable connection with the furnishing of these liquors than he is now disposed to admit. When to these significant circumstances we add the fact that three unimpeached witnesses testify to actual purchases at this place of business, and the conduct of the defendant in paying the internal revenue tax as a liquor dealer, the conclusion of guilt is not reasonably avoidable. The denial made by the defendant and his witnesses is marked by a hesitation and indefiniteness which deprives it of much of the force it might otherwise have had, and the explanation of the payment of the internal revenue

2. INTOXICATING LIQUORS: violation of statute: evidence: certified copy of Federal tax receipt holders. tax is not convincing. His persistent and repeated denial of such payment until the questions of counsel disclosed that his name was on the certified list of stamp holders justifies much hesitation in accepting the absolute veracity of his other denials. The statute, Chapter 105, Laws of the 34th General Assembly, makes the payment of the tax prima-facie evidence that the person paying it is engaged in the sale of intoxicating liquors or in keeping them with intent to sell. The payment by the defendant was concededly made after he had been enjoined, and but a short time prior to the alleged sales to Tuttle, Wilson and Hulburt. The burden was upon him to satisfactorily explain this incriminating

circumstance, and this we think he did not do. The case is in many respects quite parallel with that of *Jones v. Welch*, 167 Iowa 443, and has features in common with *Sawyer v. Frank*, 152 Iowa 341.

On the whole record, we are satisfied that defendant should be adjudged guilty of contempt. The ruling of the trial court is therefore annulled, and the cause is remanded for disposition in harmony with this conclusion. The costs of this appeal, with an attorney's fee of $25.00, will be taxed to the respondent Meyer.—*Annulled.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.